**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MAI ROQUEMORE, as the Personal Representative**
**of the ESTATE OF NICKIE DONALD,**

        **Plaintiff,**

v.                                                                  **CASE NO. 08-12025**
                                                                    **HONORABLE DENISE PAGE HOOD**
**E.R. EXPRESS and PAVEL KARKHU,**
**AMERICAN BRIDGE MANUFACTURING,**
**a foreign corporation, SHERMAN BROTHERS**
**TRUCKING, a foreign corporation, TRANS/MID-**
**AMERICA, INC., a Michigan corporation,**

        **Defendants.**
_____/

**MEMORANDUM OPINION AND ORDER AND**
**NOTICE OF STATUS CONFERENCE**

**I.   INTRODUCTION**

Before the Court are the following matters: Defendant American Bridge Manufacturing ("American Bridge") filed a Motion for Summary Judgment on October 24, 2008.[1] Defendants, Pavel Karkhu ("Karkhu") and ER Express, filed a Response on November 12, 2008, as did Plaintiff on November 11, 2008. Defendant American Bridge filed replies to both Defendant ER Express' and Karkhu's Response and Plaintiff's Response. Also, Defendant Sherman Brothers Trucking ("Sherman Brothers") filed a Motion for Summary Judgment on October 29, 2009. Plaintiff filed a Response in Opposition on November 24, 2008, and Sherman Brothers filed a Reply on December

---

[1] Defendant Sherman Brothers filed a Concurrence with American Bridge's Motion for Summary Judgment on January 23, 2009.

3, 2008. Additionally, Defendant Trans/Mid-America, Inc.("Trans/Mid-/America") filed a Motion for Summary Judgment on November 13, 2008.[2] Plaintiff filed a Response in Opposition on November 18, 2008. Defendants ER Express and Karkhu also filed a Response on December 3, 2008. Lastly, Plaintiff filed a Motion to Compel Depositions and to Extend Discovery on November 7, 2008. No Responses have been filed to Plaintiff's motion to date. A hearing on these matters was held on February 4, 2009.

## II.     STATEMENT OF FACTS

Plaintiff, Mai Roquemore, as Personal Representative of the Estate of Nickie Donald, originally filed this action in Wayne County Circuit Court on June 15, 2007 against Defendants E.R. Express and Pavel Karkhu. Thereafter, Plaintiff filed a First Amended Complaint adding Defendants American Bridge, Walter Toebe Construction Company ("Toebe"), Sherman Brothers, and Trans/Mid-America, Inc. seeking damages for bodily injuries and death of Plaintiff's husband, Nickie Donald ("Donald"), arising out of alleged negligent conduct of Defendants. On May 2, 2008, the only non-diverse Defendant, Toebe, was dismissed and Defendant Trans/Mid-America removed this action to this Court pursuant to 28 U.S.C. § 1332 on May 8, 2008, as there remained only diverse parties in the litigation.[3]

On May 25, 2007, Plaintiff's decedent was traveling eastbound on I-94 in the City of Detroit, near the Warren Avenue exit. Donald was driving a semi-truck and traveling next to Defendant

---

[2] Defendant Sherman Brothers filed a Concurrence with Trans/Mid-America's Motion for Summary Judgment on January 23, 2009.

[3] Plaintiff is a citizen of Michigan, and Defendants Trans/Mid-America, Pavel Karkhu, Sherman Trucking, and ER Express are citizens of the State of Washington, and Defendant American Bridge is a citizen of Oregon.

Karkhu's truck, owned by Defendant ER Express, and carrying a twenty-eight (28) ton steel bridge section. The bridge section was manufactured and loaded onto ER's truck by Defendant American Bridge and its employees or agents. Defendant American Bridge also supplied the specifications necessary to obtain the necessary special use permit that was required due to the fact that the height of Karkhu's truck was 13'9". About three-quarters of a mile from the I-96 interchange, Karkhu's truck hit an overpass with a height of 13'8", causing the bridge section to come off the truck and fall upon the cab of Donald's truck, who remained trapped in the cab because rescuers could not get to him immediately due to the weight of the bridge. Donald ultimately died as a consequence of these events.

### III.   APPLICABLE LAW & ANALYSIS

#### A.   Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But, as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry to summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

> showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted).

### B. Defendants' Motions

#### 1. American Bridge's Motion for Summary Judgment

Defendant American Bridge argues that it should be dismissed from this action based on the State of Michigan's vehicle code which imposes absolute liability upon an owner of a vehicle which collides with a bridge or viaduct due to the height of the vehicle. *See* MICH. COMP. LAWS § 257.719(1). Defendant American Bridge asserts that since Defendant Kakhur and ER Express are absolutely liable under § 257.719(1), judgment should be entered in its favor. In the alternative, Defendant argues that even if this Court were to conclude that § 257.719(1) does not preclude joint and several liability, Defendant American Bridge should nonetheless be dismissed because it did not owe any duty to Plaintiff's decedent.

Michigan Compiled Laws § 257.719(1) states that:

A vehicle unloaded or with load shall not exceed a height of 13 feet 6 inches. The

> owner of a vehicle that collides with a lawfully established bridge or viaduct is liable for all damage and injury resulting from a collision caused by the height of the vehicle, whether the clearance of the bridge or viaduct is posted or not.

MICH. COMP. LAWS § 257.719(1). The seminal case interpreting this statutory language is *Farmer v. Christensen*, 229 Mich. App. 417; 581 N.W. 2d 807 (1998), the case upon which Defendant American Bridge relies in support of its argument that Kakhur and ER Express are solely liable to Plaintiff. In *Farmer*, the Michigan Court of Appeals held that § 257.719(1) imposes absolute liability on a vehicle owner whose vehicle causes injury by colliding with an overpass due to the height of the vehicle. *Id.* at 420-24. Plaintiff counters that Defendant misconstrues the *Farmer* court's holding, and that § 257.719(1) does not preclude Plaintiff from bringing claims against other parties for their negligence. Plaintiff is incorrect.

In *Farmer*, the plaintiffs brought an action against the driver and the Michigan Department of Transportation (MDOT) for injuries they suffered when the driver's truck hit an overpass, causing the gravel hopper loaded on the truck to fall onto the highway, where the plaintiffs' vehicle struck it. *Id.* at 418. The MDOT brought a cross-claim against the driver for indemnification for the consent judgment that the MDOT entered into with the Plaintiffs. *Id.* The trial court granted summary disposition in favor of the driver, and the Michigan Court of Appeals reversed, finding that the driver's truck breached the "duty of care, being . . . four inches over the statutorily allowed maximum" which rendered the driver absolutely liable for the plaintiffs' injuries because "§719(1) creates absolute liability for a breach of the statutory duty[.]" *Id.* at 419, 427. The *Farmer* court explicitly rejected the driver's argument that his "ultimate liability was subject to the principles of comparative fault [and] joint and several liability[.]" *Id.* at 421. The *Farmer* court held that once the vehicle owner committed a violation which was the proximate cause of the harm, § 719(1) "fixes

5

liability on the violator even where concurrent or intervening acts of negligence precipitate a collision with a bridge or overpass." *Id.* at 421. Section 719(1) prevents the vehicle owner from "interpos[ing] defenses of comparative fault on the part of" other actors which "would undermine the plain language of the absolute liability statute as well as its overriding purpose, i.e., protecting bridges and overpasses, and the traveling public, from damage or injury as a result of nonconforming vehicle." *Id.* at 421-22. Just as MDOT could not be held accountable "for its alleged negligence in marking the overpass with an inaccurate sign" and was entitled to indemnification from the owner of the non-conforming vehicle, Defendant American Bridge cannot be held accountable, even if, as Plaintiff suggests, it was.[4] Defendant American Bridge's Motion for Summary Judgment is GRANTED.

The Court notes that Defendants Karkhu and ER Express filed a Response to Defendant American Bridge's Motion for Summary Judgment, arguing that: (1) *Farmer* is distinguishable from the facts of this case, (2) the "absolute liability" of § 719(1) is preempted by Michigan's No Fault Act, and (3) American Bridge waived its argument regarding absolute liability under § 719(1). None of these arguments are persuasive. The fact that in the *Farmer* case, the driver had not obtained a special use permit, and Defendants Karkhu and ER Express did obtain such a permit does not change the outcome of American Bridge's Motion for Summary Judgment.

The *Farmer* court found that the driver violated the code merely by driving a vehicle with a height over the statutorily allowed maximum height of 13 feet 6 inches. *Id.* at 419. Five years after its decision in *Farmer*, the Michigan Court of Appeals reiterated its conclusion that § 719(1)

---

[4] The Court will not entertain American Bridge's alternate argument regarding its lack of duty to Plaintiff's decedent.

"establishes absolute liability for all damages where there is a collision with an overpass caused by the unlawful height of the vehicle." *Hill v. Sacka*, 256 Mich. App. 443, 450; 666 N.W.2d 282 (2003). When (1) the owner of a vehicle over 13 feet 6 inches in height, (2) hits an overpass and (3) causes injury, he or she has violated § 719(1), notwithstanding the fact that he or she has obtained a special use permit.

Contrary to the argument of ER Express and Karkhu, Michigan's No Fault Act, MICH. COMP. LAWS § 500.3101 *et seq.*, does not preempt § 719. ER Express and Karkhu make the unsupported argument that tort liability for bodily injury and property damage under § 719 was abolished by § 3135 of Michigan's No Fault Act. This argument ignores the fact that *Farmer* relied on § 719 as binding authority in 1998, two years after § 3135 abolished tort liability for bodily injury except in limited circumstances. Additionally, *Hill* relied on § 719 as authoritative in 2003. The Court also fails to ascertain how, or if, there is a conflict between the two statutory provisions that would require one to preempt application of the other. It appears that § 500.3135 merely requires the Plaintiff to prove certain injuries in order to recover non-economic damages, specifically "death, serious impairment of body function, or permanent serious disfigurement." MICH. COMP. LAWS § 500.3135.

Lastly, the Court is disinclined to find that Defendant American Bridge waived its argument regarding Michigan's absolute liability statute under the clear language of the statute and the intent of the Michigan legislature.[5]

---

[5] The Court notes at this juncture that at the February 4, 2009 hearing, the Court granted in part Plaintiff's Motion to Compel Depositions and to Extend Discovery. In said motion, Plaintiff argued that she will need an additional ninety days to complete three depositions of employees of Defendant American Bridge, as well as gather additional discovery and take expert depositions, the latter two not completed presumably because Plaintiff was awaiting completion

## 2. Defendant Sherman Brothers' Motion for Summary Judgment

Defendant Sherman Brothers brings its Motion for Summary Judgment arguing that it is not liable to Plaintiff under any theory pled. Sherman Brothers also asserts that Plaintiff has failed to state a claim upon which relief can be granted as Sherman Brothers owed no duty to Plaintiff under the law as there was no relationship between the parties giving rise to such a duty. Sherman Brothers argues that Plaintiff cannot establish a prima facie case of negligence, which requires Plaintiff to establish that (1) Sherman Brothers owed Plaintiff's decedent a duty, (2) Sherman Brothers breached that duty, (3) Sherman Brothers' breach of the duty was a proximate cause of Plaintiff's decedent's injuries, and (4) Plaintiff suffered damages.

Sherman Brothers was contacted by American Bridge with the dimensions of the load and Sherman Brothers posted the load on its website in order to find a shipper for American Bridge's load. Karkhu contacted Sherman Brothers and indicated that he had experience transporting oversize loads. On May 15, 2007, Sherman Brothers entered into a broker agreement with ER Express only, wherein ER Express, as the Motor Carrier, agreed to transport and deliver the bridge section from Oregon to Michigan.

Based on this Court's previous discussion of § 719, *Farmer*, and *Hill, supra,* Sherman Brothers was not the owner of the vehicle with the unlawful height which hit the overpass resulting

---

of depositions of the three employees of American Bridge.
        The Court ordered Defendant American Bridge to produce Michael Steele and Ed Schurman to be deposed by Plaintiff. The Court further ordered that Plaintiff would have until the end of February, 2009 to conduct these depositions and that she may submit supplemental briefing if necessary. On March 6, 2009, Plaintiff filed a Supplemental Brief in Opposition to Defendant American Bridge's Motion for Summary Judgment. On March 10, 2009, Defendant American Bridge filed a Brief in Reply to Plaintiff's Supplemental Brief. The Court has reviewed and considered the parties' supplemental submissions. Neither changes this Court's conclusion as to American Bridge's Motion for Summary Judgment.

in Plaintiff's decedent's injury, as such Sherman Brothers cannot be liable.  Section 719(1) "fixes liability on the violator even where concurrent or intervening acts of negligence precipitate a collision with a bridge or overpass." *Farmer*, 229 Mich. App. at 421.

### 3. Defendant Trans/Mid-America's Motion for Summary Judgment

Likewise, Defendant Trans/Mid-America cannot be held liable under the plain language of § 719, and the holdings in *Farmer*, and *Hill*, *supra.* Trans/Mid-America is a wire permit service, a company that obtains permits for vehicles that exceed allowable height, length, or weight for transportation companies.  ER Express retained Trans/Mid-America to obtain permits for those states its driver, Karkhu, would be traveling with the load carrying the bridge section.  Trans/Mid-America raises the same argument as American Bridge: that pursuant to § 719, regardless of the circumstance of a bridge accident, all the damage and injury resulting from it is the responsibility of the owner of the vehicle which strikes the overpass.   As previously discussed above, this Court agrees with Trans/Mid-America.

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that Defendant American Bridge Manufacturing's Motion for Summary Judgment [**Docket No.17, filed October 24, 2008**] is GRANTED.

IT IS FURTHER ORDERED that Sherman Brothers Trucking's Motion for Summary Judgment [**Docket No. 19, filed October 29, 2008**] is GRANTED.

IT IS FURTHER ORDERED that Trans/Mid-America's Motion for Summary Judgment [**Docket No. 24, filed November 13, 2008**] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Compel Depositions and Extend

Discovery [**Docket No. 21, filed on November 7, 2008**] is GRANTED IN PART AND DENIED IN PART.

      IT IS FURTHER ORDERED that the parties appear for a Status Conference on <u>November 16, 2009 at 2:15 p.m.</u>

                                        <u>S/Denise Page Hood</u>
                                        Denise Page Hood
                                        United States District Judge

Dated: September 28, 2009

      I hereby certify that a copy of the foregoing document was served upon counsel of record on September 28, 2009, by electronic and/or ordinary mail.

                                        <u>S/William F. Lewis</u>
                                        Case Manager