UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAI ROQUEMORE, as Personal Representative
of the ESTATE OF NICKIE DONALD,

    Plaintiff,

v.

    Case No. 08-12025

    Honorable Denise Page Hood

AMERICAN BRIDGE MANUFACTURING and
TRANS/MID-AMERICA, INC.,

    Defendants.

                                /

**OPINION AND ORDER GRANTING DEFENDANT TRANS/MID-AMERICA, INC.'S
RENEWED MOTION FOR SUMMARY JUDGMENT
and
ORDER DISMISSING DEFENDANT TRANS/MID-AMERICA, INC. ONLY**

**I.  BACKGROUND/FACTS**

    **A.  Procedural Background**

Plaintiff Mai Roquemore, as Personal Representative of the Estate of Nickie Donald, originally filed this action in Wayne County Circuit Court on June 15, 2007 against Defendants E.R. Express ("ER") and Pavel Karkhu ("Karkhu"). Plaintiff then filed a First Amended Complaint adding Defendants American Bridge Manufacturing ("American Bridge"), Walter Toebe Construction Company ("Toebe"), Sherman Brothers Trucking ("Sherman Brothers"), and Trans/Mid-America, Inc. ("TMA") seeking damages for bodily injuries and death of Plaintiff's husband, Donald. On May 2, 2008, the only non-diverse Defendant Toebe, was dismissed before the State Court and Defendant TMA removed this action to this Court pursuant to 28 U.S.C. § 1332

on May 8, 2008, based on the diversity jurisdiction.[1]

After dispositive motions were filed before this Court, a September 28, 2009 Opinion was issued granting summary judgment motions filed by American Bridge, Sherman Brothers, TMA. (Doc. #43)  A settlement agreement was reached between Plaintiff and Defendants ER and Karkhu. (Doc. #56)  Plaintiff thereafter appealed the Court's order granting summary judgment as to the remaining Defendants American Bridge, Sherman Brothers and TMA.  (Doc. #57)  On May 14, 2012, the Sixth Circuit Court of Appeals issued its decision reversing and remanding the matter to this Court. (Doc. #62)  The mandate issued on June 15, 2012.  (Doc. #67)  A Stipulation and Order dismissing Sherman Brothers was entered on September 14, 2012.  (Doc. #87)

The remaining Defendants are American Bridge and TMA.  This matter is now before the Court on TMA's Renewed Motion for Summary Judgment and Motion for Leave to File Three Notices of Non-Party Fault pursuant to MCR 2.112(k).  A hearing was held on the matter.

**B.     Pertinent Facts**

On May 25, 2007, Donald was traveling eastbound on I-94 in the City of Detroit, near the Warren Avenue exit.  Donald was driving a semi-truck and traveling next to Karkhu's truck, owned by Defendant ER, and carrying a twenty-eight (28) ton steel bridge section.  The bridge section was manufactured and loaded onto ER's truck by American Bridge and its employees or agents. American Bridge also supplied the specifications necessary to obtain the necessary special use permit that was required due to the fact that the height of Karkhu's truck was 13' 9".  About three-quarters of a mile from the I-96 interchange, Karkhu's truck hit an overpass with a height of 13' 8",

---

[1] Plaintiff is a citizen of Michigan, and Defendants TMA, Pavel Karkhu, Sherman Trucking, and ER Express are citizens of the State of Washington, and Defendant American Bridge is a citizen of Oregon.

causing the bridge section to come off the truck and fall upon the cab of Donald's truck, who remained trapped in the cab because rescuers could not get to him immediately due to the weight of the bridge. Donald ultimately died as a consequence of these events.

ER retained TMA to obtain the permits from various states Karkhu would be traveling with the load at issue. TMA does not inspect the truck or load or consider any other information pertaining to the truck, other than information provided by the driver. ER's driver provided TMA the route to be traveled in Michigan. ER indicated to TMA that the "total loaded vehicle height" was 13 feet, 9 inches. TMA obtained the "Special Transportation or Building Moving Permit" issued by the Michigan Department of Transportation on behalf of ER noting the same height dimensions. The "Incident Report Form" from the accident indicated that the three measurements taken at the time of the accident were 13 feet, 10.75 inches, 14 feet, one-half inch, and 14 feet, 3 inches, all greater than the total loaded vehicle height noted on the permit of 13 feet, 9 inches. TMA asserts that the permits are stamped with the statement "permit accuracy responsibility of driver" since it never inspects the truck or load.

### III.   ANALYSIS

#### A.   Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the

3

nonmoving party." *Id*. Although the court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

      **B.**    **TMA's Motion for Summary Judgment**

TMA moves for summary judgment arguing that it is not liable to Plaintiff because it had no legal duty to the decedent. TMA argues that its duty to Plaintiff stemmed solely from the obligations outlined in the contractual relationship between TMA and ER. Plaintiff responds that TMA did owe a duty to the decedent. Plaintiff claims TMA merely handled the permit as any other permit, even though Michigan was unique in the country in that it did not confirm vertical clearances for truck drivers. Plaintiff asserts that TMA should have advised ER that the vertical clearances in Michigan needed to be checked by the driver.

In Michigan, to establish a *prima facie* case of negligence, a plaintiff must prove: 1) the defendant owed the plaintiff a legal duty; 2) the defendant breached the legal duty; 3) plaintiff suffered damages; and, 4) the defendant's breach was a proximate cause of the plaintiff's damages.

*Loweke v. Ann Arbor Ceiling & Partition Co., L.L.C.,* 489 Mich. 157, 162 (2011). Duty depends in part on foreseeability–whether it was foreseeable that a defendant's conduct may create a risk of harm to another person and whether the result of that conduct and intervening causes was foreseeable. *Buczkowski v. McKay,* 441 Mich. 96, 101 (1992). It is axiomatic that there can be no tort liability unless a defendant owed a duty to a plaintiff. *Beaty v. Hertzberg & Golden, P.C.,* 456 Mich. 247, 262 (1997). Every person engaged in the performance of an undertaking has a duty to use due care or to not unreasonably endanger the person or property of others. *Hill,* 492 Mich. at 660. Duty arises when a person actively engages in a certain conduct which may arise from a statute, a contractual relationship or by operation of the common law. *Id.* at 661. Under common law duty, before a duty can be imposed, there must be a relationship between the parties and the harm must have been foreseeable. *Id.* If either of these two factors are lacking, then it is unnecessary to consider any of the remaining factors. *Id.*

Where a contract is involved, the threshold question is whether a defendant owes a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. *Fultz v. Union-Commerce Associates,* 470 Mich. 460, 469 (2004). If no independent duty exists, no tort action based on a contract will lie. *Id.* A contracting party's assumption of contractual obligations does not extinguish or limit separately existing common law or statutory tort duties owed to non-contracting third parties in the performance of the contract. *Loweke,* 489 Mich. at 159.

In this case, TMA was contracted by ER to obtain the necessary permits from Michigan for travel in Michigan by ER's driver, Karkhu. TMA undertook to obtain the appropriate permit. The issue then is whether TMA was negligent by not warning Karkhu to check the vertical clearances, despite the "stamp" on the permit which indicates Karkhu, the driver, should check the clearances.

TMA acknowledged that it did not confirm the vertical clearance, faxing the permit to Karkhu, already in route, and without the ability to check the clearance. Plaintiff argues that TMA was negligent in failing to expressly advise Karkhu beyond the faxed permit that Karkhu should have checked the clearance of the bridge.

TMA acknowledges that the *Fultz* and *Loweke* cases stand for the proposition that it had a separate and distinct duty to perform "that specific contractual duty" in a non-negligent manner, which it did by obtaining the permit under the contract with ER. TMA argues that under *Hill*, the legal principle as to duty is that such duty is confined to the "scope" of the contract and limits the extent of any duties to third parties.

The Michigan Supreme Court in the recent case of *Hill*, instructs the courts to focus on the parties' relationship to establish duty between the plaintiff and the defendant. The contractual relationship in this case was between TMA and ER was to obtain the permit from Michigan, which was performed by TMA. TMA's duty under the contract between TMA and ER was complete once the permit was obtained from Michigan. TMA, had a separate and distinct common law duty apart from the contract to obtain the permit from Michigan in a non-negligent manner, which it did.

The relationship between TMA and decedent is outside the scope of beyond the contract between TMA and ER. There is nothing in the contract between TMA and ER as to any obligation by TMA to the decedent, or any other third-party. TMA had no duty to take any action relative to inspecting or ensuring the vertical clearance of the bridge at issue, or any bridge in Michigan. Plaintiff cannot show any duty by TMA to confirm bridge heights. There is no dispute that the permit was expressly stamped noting that the permit accuracy was the responsibility of the driver. (Doc. #72, Ex. C) It was ER who gave TMA the vertical height of the loaded vehicle at issue. (Doc.

#72, Ex. E)  The height of the loaded vehicle was confirmed to exceed the height given by ER to TMA at the scene of the accident. (Doc. #72, Ex. G)

Even though the driver, Karkhu, testified he could not "open" the fax sent by TMA since he was en route and driving and he had yet to open his computer, the vertical height was already known by ER since it was sent by ER to TMA.  TMA did not undertake any action to check or confirm the height of the bridge.  Exhibits and testimony from the State of Michigan representative noted that Michigan did not guarantee the sufficiency of vertical clearances.  (Doc. #72, Ex. C)  Even if TMA "undertook" to confirm the vertical clearance from Michigan, Michigan would have been unable to guarantee the sufficiency of the vertical clearances.  In Michigan, the permit-holder was given the duty to check the vertical clearance and overhead obstructions prior to movement.  (Doc. #72, Ex. C)

In *Hill*, the Michigan Supreme Court found that there was a limited relationship between the defendant installers who installed an electric dryer in plaintiff's home.  Plaintiffs had purchased a home where the previous owners took their appliances with them, turning off the gas to the line supplying the dryer.  There was no cap on the end of the gas line.  Plaintiffs purchased a new washer and electric-powered dryer from defendant retailers.  The defendant installers installed the electric dyer, which functioned without incident.  The defendant installers did not cap the gas line to the old gas dryer.  The Michigan Supreme Court held that, "[b]ecause the limited relationship of the parties did not require defendant installers to undertake any action with regard to the gas line, plaintiffs' negligence claim fails as a matter of law."  *Hill,* 492 Mich. at 664.  As in *Hill,* the relationship between ER and TMA, did not require TMA to confirm the vertical clearance of the bridge.  Plaintiff has not shown that TMA had a duty to the decedent to confirm the vertical clearance of the bridge.

The Court cannot extend a duty on TMA to the decedent, when there is no duty between TMA and ER requiring TMA to confirm the vertical clearance of the bridge. The relationship of TMA to the decedent is beyond the scope of the contractual relationship between TMA and ER and any separate common-law duty to the decedent. As a matter of law, TMA owed no legal duty to the decedent.

### III. CONCLUSION

IT IS ORDERED that Trans/Mid-America, Inc.'s Renewed Motion for Summary Judgment and to Dismiss **(No. 72)** is GRANTED.

IT IS ORDERED that the Motion as to Notice of Fault **(No. 71)** is MOOT.

IT IS FURTHER ORDERED that Defendant Trans/Mid-America, Inc. only is DISMISSED with prejudice.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  March 28, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 28, 2013, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager

8