UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAI ROQUEMORE, as Personal Representative
of the ESTATE OF NICKIE DONALD,

    Plaintiff,

Case No. 08-12025

v.

Hon. Denise Page Hood

AMERICAN BRIDGE MANUFACTURING and
TRANS/MID-AMERICA, INC.,

    Defendants.

_____/

**OPINION AND ORDER DENYING AMERICAN BRIDGE'S MOTION
FOR SUMMARY JUDGMENT
and
ORDER SETTING DATES**

**I.    BACKGROUND/FACTS**

    **A.    Procedural Background**

Plaintiff, Mai Roquemore, as Personal Representative of the Estate of Nickie Donald, originally filed this action on June 15, 2007 against Defendants E.R. Express ("ER") and Pavel Karkhu ("Karkhu") in Wayne County Circuit Court, State of Michigan, seeking damages for bodily injuries and death of Plaintiff's husband, Donald. Plaintiff then filed a First Amended Complaint adding Defendants American Bridge Manufacturing ("American Bridge"), Walter Toebe Construction Company ("Toebe"), Sherman Brothers Trucking ("Sherman Brothers"), and Trans/Mid-

America, Inc. ("TMA"). On May 2, 2008, the only non-diverse Defendant Toebe, was dismissed before the State Court. Defendant TMA then removed this action to this Court pursuant to 28 U.S.C. § 1332 based on the Court's diversity jurisdiction.[1]

After dispositive motions were filed before this Court, a September 28, 2009 Opinion was issued granting summary judgment motions filed by American Bridge, Sherman Brothers, TMA. (Doc. #43) A settlement agreement was reached between Plaintiff and Defendants ER and Karkhu. (Doc. #56) Plaintiff thereafter appealed the Court's order granting summary judgment as to the remaining Defendants American Bridge, Sherman Brothers and TMA. (Doc. #57) On May 14, 2012, the Sixth Circuit Court of Appeals issued its decision reversing and remanding the matter to this Court. (Doc. #62) The mandate issued on June 15, 2012. (Doc. #67) A Stipulation and Order dismissing Sherman Brothers was entered on September 14, 2012. (Doc. #87)

On remand, the Court granted Defendant TMA's Motion for Summary Judgment. (Doc. #84) This matter is now before the Court on the remaining Defendant American Bridge's Motion for Summary Judgment. Briefs have been filed and a hearing held on the matter.

---

[1] Plaintiff is a citizen of Michigan, and Defendants TMA, Pavel Karkhu, Sherman Trucking, and ER Express are citizens of the State of Washington, and Defendant American Bridge is a citizen of Oregon.

**B.     Pertinent Facts**

On May 25, 2007, Donald was traveling eastbound on I-94 in the City of Detroit, near the Warren Avenue exit. Donald was driving a semi-truck and traveling next to Karkhu's truck, owned by Defendant ER, and carrying a twenty-eight (28) ton steel bridge section. The bridge girder section was manufactured and loaded onto ER's truck by American Bridge in Reedsport, Oregon by its employees or agents. American Bridge also supplied the specifications necessary to obtain the necessary special use permit that was required due to the fact that the height of Karkhu's truck was 13' 9". About three-quarters of a mile from the I-96 interchange, Karkhu's truck hit an overpass with a height of 13' 8", causing the bridge section to come off the truck and fall upon the cab of Donald's truck, who remained trapped in the cab because rescuers could not get to him immediately due to the weight of the bridge. Donald ultimately died as a consequence of these events. The "Incident Report Form" from the accident indicated that the three measurements of the truck taken at the time of the accident was 13 feet, 10.75 inches, 14 feet, one-half inch, and 14 feet, 3 inches, greater than the total loaded vehicle height noted on the permit obtained from TMA of 13 feet, 9 inches.

Robert Jones, Vice President of Operations for Walter Toebe Construction Company, testified at his deposition that he gave specific directions to American

Bridge about which end of the girder was to be at the front of the truck trailer. (Jones Dep., p. 10) He further testified that he told American Bridge that the fascia side of the girder (the higher side) should be loaded so that it was on the driver's side of the trailer. (Jones Dep., pp. 9, 71)

Fred Jacquot, the Plant Manager for American Bridge located in Reedsport, Oregon, testified at his deposition that American Bridge fabricated and manufactured the bridge girder, loaded the girder onto the trailer, and provided the girder's dimensions to Sherman Brothers Trucking. (Jacquot Dep., pp. 7, 22, 66, 87-88) Jacquot further testified that he had conversations with Jones from Toebe Construction regarding the specifics of the delivery of the bridge girder sections to the job site. (Jacquot Dep., pp. 55-56) Jacquot stated that the girder section was to be loaded a certain way to prevent damage during shipment pursuant to the contract with Toebe Construction. (Jacquot Dep., p. 77) As to shipping the girder sections, such were to be loaded vertically with the fascia (high end of the girder) on the driver's side. (Jacquot Dep., p. 77) Jacquot indicated he had the final authority as to whether the equipment was properly loaded and permitted to leave the Reedsport, Oregon plant for Michigan. (Jacquot Dep., pp. 65-66)

Edward Schurman, yard lead at American Bridge, testified that after the bridge girder was initially loaded onto Karkhu's truck, it had to be adjusted. After weighing

4

the truck, it was determined that the load had to be adjusted because there was too much weight on one end. (Schurman Dep., pp. 26-27) Karkhu then returned to American Bridge's yard and the load was adjusted by American Bridge employees. The load was then readjusted a second time by American Bridge. (Schurman Dep., pp. 27-29) Schurman testified that he saw Karkhu measure the load from the top of the girder to the bottom of the girder, then from the ground to the highest point on the trailer with the load on it. (Schurman Dep., p. 30) Schurman stated that he himself, nor anyone else, measured from the top of the girder to the ground to obtain the total height of the loaded trailer. (Schurman Dep., p. 32)

Karkhu testified at his deposition that he measured the height and length of the bridge girder while it was on the ground before it was loaded on the trailer. (Karkhu Dep., pp. 83-85) He indicated that he told the American Bridge employees that the load needed to be leveled and that the employees thereafter cut 4x4 railroad ties and placed them between the loaded bridge girder and on top of the semi-trailer. (Karkhu Dep., pp. 86-88)

### III. ANALYSIS

#### A. Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

  **B.**  **Common Law Duty**

6

American Bridge moves for summary judgment arguing that it owed no common law duty to the decedent. Plaintiff argues that American Bridge owes such a duty and there are genuine issues of material facts to preclude summary judgment.

To establish a *prima facie* case of negligence, a plaintiff must prove: 1) the defendant owed the plaintiff a legal duty; 2) the defendant breached the legal duty; 3) plaintiff suffered damages; and, 4) the defendant's breach was a proximate cause of the plaintiff's damages. *Loweke v. Ann Arbor Ceiling & Partition Co., L.L.C.,* 489 Mich. 157, 162 (2011). Duty is a question of law for the court to decide. *Seldon v. Suburban Mobility Auth. for Regional Transportation,* 297 Mich. App. 427, 433 (2012). Duty depends in part on foreseeability–whether it was foreseeable that a defendant's conduct may create a risk of harm to another person and whether the result of that conduct and intervening causes was foreseeable. *Buczkowski v. McKay,* 441 Mich. 96, 101 (1992). It is axiomatic that there can be no tort liability unless a defendant owed a duty to a plaintiff. *Beaty v. Hertzberg & Golden, P.C.,* 456 Mich. 247, 262 (1997). Every person engaged in the performance of an undertaking has a duty to use due care or to not unreasonably endanger the person or property of others. *Hill,* 492 Mich. at 660. Duty arises when a person actively engages in a certain conduct which may arise from a statute, a contractual relationship or by operation of the common law. *Id.* at 661. Under common law duty, before a duty can be

imposed, there must be a relationship between the parties and the harm must have been foreseeable. *Id.* If either of these two factors are lacking, then it is unnecessary to consider any of the remaining factors. *Id.*

As to the duty factor, Michigan courts have held that every person engaged in the performance of an undertaking has a duty to use due care or not to unreasonably endanger another person or property of others. *Hill,* 492 Mich. at 660. Here, the relationship between the parties is that American Bridge loaded the bridge girder section onto a truck to be delivered across the county and the decedent, as others on a highway, was part of the traveling public. Michigan courts have found a relationship between truck drivers and others on the highway. *See Kalinowski v. McAlester,* 2013 WL 6083719 at *3 (Mich. App. Nov. 19, 2013).

American Bridge, who undertook to contractually load the trailer with the bridge girder section, had a duty to safely load the trailer so that others on the highway would be safe from the load. It is foreseeable that others on the highway could be harmed if a load on the trailer was not properly secured or if the truck hit a bridge because the load was beyond the bridge height. Bridges along the highways are common all throughout the United States. In addition, the Michigan statute provides that one who loads a vehicle must do so to prevent its contents from dropping, shifting, blowing off or otherwise escaping from the vehicle and that a

company who loads a vehicle to travel on a public highway in violation of this section is liable under the statute. M.C.L. § 257.720(4). This statute expresses Michigan's concern that vehicles must be properly loaded to protect the public.

As admitted by American Bridge, it had a contractual duty to load the bridge girder section in a certain way and that it had the final authority to determine whether the girder was properly loaded before it left its yard. American Bridge, by undertaking the job to load the bridge girder section onto the truck had a duty to use reasonable care to ensure that the height of the bridge girder while on the truck was safe to travel on the highways and under or over bridges along the way. The Court finds as a matter of law that American Bridge had a duty to the decedent in this instance.

The duty issue is the only argument raised by American Bridge in its motion. Courts have held that the issues of whether a duty was breached or whether the defendant proximately caused the injury are generally questions of fact for the jury. *Lathan v. Nat'l Car Rental Sys., Inc.,* 239 Mich. 330, 340 (2000); *Mills v. White Castle Sys., Inc.,* 167 Mich. App. 202, 209 (1988). American Bridge did not move for summary judgment on any of these claims.

### III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that American Bridge's Motion for Summary Judgment **(Doc. No. #94)** is **DENIED**.

IT IS FURTHER ORDERED that the following schedule governs this matter:

Proposed Joint Final Pretrial Order to be submitted by: **October 28, 2014**
(See E. D. Mich. LR 16.2)

Final Pretrial Conference: **November 4, 2014, 2:30 p.m.**
(All parties with authority to settle must appear.)

Trial Date: **December 2, 2014, 9:00 a.m.**


s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: September 26, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 26, 2014, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager